UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| Midwest Skiing Company, LLC, | Case No. 25-12543-cjf |
| d/b/a Whitecap Mountains Resort | Chapter 11 (Subchapter V) |

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION, AS
MODIFIED JUNE 29, 2026

Midwest Skiing Company, LLC d/b/a Whitecap Mountains Resort (the "Debtor") filed a

plan of reorganization on April 30, 2026, as modified by modifications filed on June 29, 2026 (the

"Plan"). The deadline for objections to confirmation of the Plan was July 1, 2026. [ECF 105] No

objections to confirmation were filed.

The Debtor filed the Declaration of David Dziuban in support of confirmation of the Plan.

[ECF 123] The Debtor also filed a report on balloting indicating all impaired classes of creditors

have accepted the Plan [ECF 126] and memorandum in support of confirmation. [ECF 128]

The Subchapter V Trustee (the "Trustee") filed a recommendation as to confirmation of

Debtor's Plan. [ECF 129] The Trustee recommendation noted the absence of a provision in the

Plan expressly providing for payment of all statutory fees in satisfaction of the requirements under

11 U.S.C. § 1129(a)(12) despite a reference in the Debtor's memorandum.

Based on the record, the Court finds that the Debtor's Plan, as modified by this order, satisfies the requirements for confirmation stated in 11 U.S.C. § 1191(a).

Accordingly, IT IS THEREFORE ORDERED AS FOLLOWS:

1.  In accordance with the Debtor's memorandum and the Trustee's recommendation on confirmation, the Plan is modified to provide that to the extent not already paid, all statutory fees under 28 U.S.C. § 1930 will be paid on the Effective Date.

2.  The Debtor's Plan of Reorganization as modified June 29, 2026, a copy of which is attached hereto, is confirmed under 11 U.S.C. § 1191(a).

3.  The Debtor must serve a copy of this Order on all creditors and parties in interest within five days of the entry of the Order and must file proof that it served all parties as required by this Order within seven days from the date of the entry of this Order.

###

2

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In re:

Midwest Skiing Company, LLC,                    Case No.: 25-12543-cjf
d/b/a Whitecap Mountains Resort                 Chapter 11 (Subchapter V)

Debtor.

---

**PLAN OF REORGANIZATION FOR MIDWEST SKIING COMPANY, LLC, AS
MODIFIED JUNE 29, 2026**

---

**Background for Cases Filed Under Subchapter V**

**A.  Description and History of the Debtor's Businesses**

Midwest Skiing Company, LLC (the "Debtor") owns and operates Whitecap Mountains Resort located in Upson, Wisconsin. The resort has year-round activities, family recreation, and events. The resort is known for its winter snow sports and Wisconsin hospitality.



1

The resort has operated ski-lifts on Whitecap Mountain since it opened operations in 1960. It was the vision of the original owner and developer Dave Lundberg that took the mountain landscape and turned into a winter resort revered by skiers and boarders alike for its natural trails and powder days.

Due to the large snowfalls from the Lake Superior snowbelt, the resort is among the top destinations for skiers across the Midwest. Historically, the Debtor has operated runs on three peaks: Thunderhead, Eagle's Nest, and Whitecap Mountain. There are 43 runs covering over 400 acres. The Debtor has a restaurant at the resort along with lodging that customers can rent for extended trips.

Whitecap Mountain annually receives some of the highest snowfall in the state making for excellent conditions and regular powder days. The Debtor has been dubbed by publications as the snowiest ski resort in Wisconsin. The high levels of snowfall coming from off Lake Superior have permitted the Debtor to operate without a significant level of snowmaking equipment that other resorts rely upon.



The snowfall for the 2023-2024 ski season was significantly below the historical norms. The snowfall for the following 2024-2025 season was also poor. As a result, the Debtor did not generate sufficient revenue to service its secured debt and operating expenses.

The Debor determined that filing a chapter 11 bankruptcy case was necessary to stop collection efforts and preserve its going concern value for the benefit of its employees, creditors, and community.

After the filing, the Debtor received an overwhelmingly positive show of support from the local and statewide skiing and boarding community. Dave Dziuban was interviewed on Wisconsin

2

Public Radio to discuss the impact of the low snowfall on the industry. The interview was a positive experience for the Debtor. The support extended online from groups such as the Skiers and Snowboarders of the Midwest. The Debtor's Facebook page received more comments, likes, and hearts than it could have imagined.

The 2025-2026 ski season was tremendous. The snow that had been absent for the prior two years returned and along with the snow came the skiers and snowboarders. Throughout the season, the Debtor maintained its operations and regular events. The hotel and restaurant were operated at capacity. The wine hut offered warmth and a break for guests.



The season culminated with the announcement that the Debtor has joined the Indy Pass Program further strengthening the Debtor's prospects for the future.

### B.  Description of Chapter 11 Proceedings

After the chapter 11 filing on November 19, 2025 (the "Petition Date"), the Debtor continued to operate as a debtor-in-possession. Following the filings, the Debtor obtained an interim order authorizing adequate protection and use of cash collateral with final approval entered January 29, 2026. The meeting of creditors for the Debtor was held and concluded on December 19, 2025. The deadline to file proofs of claim or interest was January 28, 2026, except for claims of governmental units provided for by 11 U.S.C. § 502(b)(9). The Plan of Reorganization (the "Plan") is proposed under subchapter v pursuant to 11 U.S.C. § 1189.

### C. Liquidation Analysis

To confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as creditors and interest holders would receive in a liquidation under chapter 7 of the Code. The liquidation analysis required by § 1190 of the Code is attached to this Plan as Exhibit 4. In a chapter 7 liquidation, the Debtor estimates that unsecured creditors would be paid 100%.

### D.    Ability to Make Future Plan Payments and Operate Without Further Reorganization

A plan proponent (here, the Debtor) must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Section 1190 of the Code requires that a Plan must provide projections that support the ability to make all payments required by the Plan.

The Debtor, as Plan proponent, has provided a plan summary as Exhibit 1 and projected financial information as Exhibit 2.

Exhibit 2 contains the projected regular income from the operations of the Debtor. The financial projections show the Debtor will have projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191 (c)(2) of approximately $486,000.

David Dziuban will continue to manage the Debtor under the Plan. Mr. Dziuban will receive annual compensation of $32,500 before taxes, which compensation is included in the projections on Exhibit 2

For all projections, the Debtor assumes that increases in revenue due to inflation will also result in expenses increasing at the same rate with a net effect over three years of the projected disposable incomes remaining constant.

The projections assume an increase in hotel and restaurant revenue for the off-season in the calendar year of 2026. The increase is consistent with the Debtor's expectation of increased occupancy rates during the summer and fall as part of Enbridge's Line 5 construction. The Debtor estimates that it will begin renting rooms once the construction commences in June 2026 with an increase over time to upwards of 20 rooms for a period of ten months.

The projections also assume an increase in revenue compared to historical performance for in-season sales. On March 31, 2026, the Debtor announced it has joined with the Indy Pass, a multi-mountain pass offering access to resorts to its members across the country. The projections assume an increase based on the information provided by Indy Pass for historical increases experienced by its new members. The Debtor anticipates it will have an increase of $85,000 to $127,500 net revenue in year one and $127,500 to $170,000 thereafter.

Previously, the Debtor was part of a pass for in-state resorts; however, the Debtor did not receive any direct proceeds related to the sale of the pass which granted a lift ticket to any holders.

4

Under the old pass, the Debtor had approximately 2,600 redemptions for free lift tickets. It is projected that 3,000 Indy Pass holders will visit the Debtor in year one and 4,000 will visit each year after.

The projections assume sales revenue during the in-season months reflecting snowfall that is more consistent with the historical norms experienced this most recent season (2025-2026) than the two previous seasons of historic lows (2023-2024, 2024-2025).

The Debtor has a local lender who has agreed to a loan of $200,000 contingent upon confirmation of the Plan. The Effective Date Loan (as defined herein) is under favorable terms which reflects the lender's support for the resort and its continued operations. The proceeds of the Effective Date Loan will be primarily used to fund Plan payments due on the Effective Date.

The final Plan payment is expected to be paid the last day of the month following the end of the third calendar year from the Effective Date. Secured creditors will be paid over a longer period of time.

***You should consult with your accountant or other financial advisor if you have any questions pertaining to the financial projections on Exhibits 1 through 4.***

## SPECIFIC PLAN TERMS

### ARTICLE 1: SUMMARY

This Plan is being proposed under subchapter V of chapter 11 of the Code. It proposes to pay creditors of the Debtor from future income from operations.

This Plan, which is also summarized on Exhibit 1, provides for:

| | |
|---|---|
| [ 3 ] | **Classes of secured claims**<br><br>Class 1 – Brighton Asset Management<br><br>Class 2 – Wisconsin Department of Workforce Development<br><br>Class 3 – Wisconsin Department of Revenue |
| [ 1 ] | **Classes of non-priority unsecured claims:**<br><br>Class 4 – Unsecured Non-Priority Creditors |
| [ 1 ] | Class 5 – Equity Interests |

5

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive distributions from the Debtor's projected disposable income. As shown on Exhibit 3, the Debtor has valued distributions to non-priority claims at approximately 100 cents on the dollar. Distributions will be made annually on the last day of the month following the end of the calendar year. This will permit the Reorganized Debtor to have the benefit of a full year and the busy season to fund the annual distributions. By way of example, if the Effective Date occurs July 2026, the first annual disbursement to non-priority unsecured creditors would be due January 31, 2027, with subsequent distributions on January 31, 2028, and January 31, 2029.

**Payment of administrative expenses:** This Plan provides for payment of administrative expenses in the amount of up to $80,000 on the Effective Date of the Plan.[1]

All creditors and equity security holders should refer to Articles 2 through 4 of this Plan for information regarding the precise treatment of their claim.

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

**ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS**

**2.01: Class 1**. The Class 1 claim of Brighton Asset Management, LLC ("Brighton") is secured by first mortgages against effectively all the Debtor's real property as well as first position liens against the Debtor's personal property. The Class 1 claim of Brighton is initially for money loaned under a Loan Agreement dated June 14, 2025. Brighton obtained a judgment on August 6, 2025, in the amount of $2,121,159.57. Brighton filed proof of claim number 11 in the amount of $2,254,695.04 including post-judgment interest, attorney's fees, and costs.

The Class 1 claim shall be deemed to be secured in the amount of $2,436,397.43, inclusive of any amounts permitted under § 506 of the Code, and shall be satisfied through monthly payments of interest only described herein, at a rate of 8.00% per annum, with a balloon payment due after 5 years, and the net proceeds that it receives from the sales of real property as set forth below. The monthly installments shall vary consistent with the seasonality of the Debtor's business and cashflow. The Debtor shall make monthly payments of $24,000 in season (November, December, January, February, and March). The Debtor shall make monthly installments of $10,660 out of season (April, May, June, July, August, September, and October). Monthly payments shall be due on the last day of the month.

The Reorganized Debtor may sell collateral securing Brighton's allowed secured claim provided that the gross sale price is not less than the amounts listed on Addendum 2.01 attached to the Plan. Brighton shall be entitled to receive the net sale proceeds to apply to the principal balance of its allowed secured claim, less any net sale proceeds attributable to a gross sale price

---

[1] The "Effective Date" is determined by Section 8.02 of the Plan.

6

above the release prices set forth on Addendum 2.01 which shall be retained by the Reorganized Debtor.

Brighton shall retain all its rights, including all liens to secure its claim. The terms of the loan documents are, in connection with the Case, altered to eliminate any provision that provides for a default due to the Debtor's insolvency, filing the Case or financial condition of the Debtor's business, and escrow deposits for taxes or insurance. Further, the Debtor will not compensate Brighton other than as may be provided in the Plan for any defaults that have occurred. The Reorganized Debtor shall be responsible for the payment of real estate taxes as they come due and to continue to keep the collateral insured. Any guaranty shall be modified to conform to the terms of the Plan. The monthly payments shall commence on the month following the Effective Date.

To the extent not modified under the Plan, all other terms of the Brighton loan documents will remain in effect. Any existing or continuing defaults of the Debtor under the loan documents shall be deemed waived or cured as of the Effective Date, including any default of a kind specified in section 365(b)(2), provided however that the judgments (the "Brighton Judgments") in the case *Brighton Asset Management, LLC v. Glebe Mountains inc. et al,* State of Wisconsin Iron County Circuit Court, Case no. 2025CV000010 (the "Brighton Litigation") will remain outstanding and in force until such time as Brighton's Secured Claim is paid in full. To the extent any terms in the Plan are inconsistent with the loan documents as of the Petition Date, the terms of the Plan shall control.

As long as the Reorganized Debtor complies with the terms of this Plan, Brighton, who also holds rights or claim against David Dziuban, on account of a guaranty of the Secured Claim, and judgment in the Brighton Litigation, is enjoined from commencing any judicial or other proceeding or otherwise exercising their rights with respect to such claim, debt, or obligation against David Dziuban, who will devote his best efforts to funding the Plan and carrying out the business of the Reorganized Debtor for the benefit of creditors paid pursuant to the Plan. This conditional injunction shall be dissolved if any default under the Plan remains uncured for 15 days following written notice by Brighton to the Reorganized Debtor of such default as provided in Section 8.06.

Brighton's Class 1 claim is impaired by the Plan.

**2.02: Class 2**. Secured claims of the of the Wisconsin Department of Workforce Development ("WDWD").

    a) WDWD filed proof of claim number 2 in the Debtor's case asserting a secured claim in the amount of $21,563.38. The basis for the secured claim is listed as "judgment" with the basis of perfection referencing Wis. Stat. § 102.83(2). Attached to the claim is a copy of the electronic docket for Iron County Circuit Court Case No. 2025WC000002. The referenced statute authorizes WDWD to issue a warrant that may be filed with the clerk of a circuit court of any county in the state, to be entered by the clerk of circuit court in the judgment and lien docket with the warrant becoming a lien against the defendant's real property.

7

b) WDWD filed proof of claim number 3 in the Debtor's case asserting a secured claim in the amount of $12,483.49. The basis for the secured claim is listed as "judgment" with the basis of perfection referencing Wis. Stat. § 102.83(2). Attached to the claim is a copy of the electronic docket for Iron County Circuit Court Case No. 2025WC000002. The referenced statute authorizes WDWD to issue a warrant that may be filed with the clerk of a circuit court of any county in the state, to be entered by the clerk of circuit court in the judgment and lien docket with the warrant becoming a lien against the defendant's real property.

The Class 2 (a) claim of the WDWD shall be deemed to be secured in the total amount of $21,563.38. The Class 2 (b) claim of the WDWD shall be deemed to be secured in the total amount of $12,483.49.

The Class 2 (a) and Class 2 (b) allowed secured claims of WDWD will be satisfied through equal monthly payments of principal and interest, at a rate of 12% per annum, over a period of five years (60 months) from the Effective Date. Payments will commence on the first day of the first month after the Effective Date. WDWD Class 2(a) and Class 2(b) claims are impaired under the Plan.

**2.03: Class 3.** All non-priority unsecured claims allowed under § 502 of the Code against the Debtor will be paid over three years through annual distributions of the Debtor's net-projected disposable income. The distributions will be paid on or before the last day of the month following the end of the first, second, and third calendar year of the Plan. The intent is to permit the Reorganized Debtor to have the benefit of a full year of net income to fund the annual distributions. Class 4 claims are impaired by the Plan.

**2.04: Class 4** – The interests of the equity security holders in the Debtor shall retain their interests and are not impaired by the Plan.

**2.05: Treatment common to all secured claims.** The liens securing the allowed secured claims in this Plan shall remain after confirmation of the Plan. With respect to all allowed secured claims, upon the Court granting a holder of an allowed secured claim relief from the automatic stay with respect to a claim secured by property of the estate, or upon the holder of an allowed secured claim obtaining relief from state court after the Effective Date, such creditor's claim, and the claims of all holders of allowed secured claims secured by the same collateral (as determined by the collateral identified in their proofs of claim), shall be treated as bifurcated into an allowed secured claim limited to the value realized by such creditor(s) upon disposition of such property, and an allowed unsecured claim for the difference between the balance due on its allowed claim and the value realized by such creditor(s) upon the disposition of the collateral. All allowed unsecured claims arising under this provision shall be treated as Class 4 general unsecured claims under this Plan and shall be entitled to their respective pro rata distribution of any undisbursed funds payable under this Plan to Class 4 creditors. Upon entry of an order granting the holder of an allowed secured claim relief from the automatic stay, the Reorganized Debtor shall cease all

8

future disbursements on such creditor's allowed secured claim and on all junior claims secured by the same collateral.

**ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES**

**3.01: Unclassified claims.** Under § 1123(a)(1) of the Code, allowed administrative expenses and priority unsecured tax claims are not in classes. Administrative expenses and priority unsecured tax claims will be paid in full.

**3.02: Administrative expenses.** Administrative expenses allowed under § 503 of the Code will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Administrative claims are subject to court approval prior to payment. Any payment to the Subchapter V Trustee for services arising after the Effective Date of the Plan as provided in section 7.04 will be subject to separate application and approval by the Court

**3.03: Priority secured and unsecured tax claims.** Each holder of an allowed priority tax claim will be paid in full on the Effective Date.

Subject to further amendment or a determination on a claim objection by the Debtor, the Michigan Department of Treasury has an allowed priority tax claim in the amount of $436, entitled to interest at the rate of 9.5%, to be paid in full on the Effective Date.

Subject to further amendment or a determination on a claim objection by the Debtor, the Internal Revenue Service ("IRS") has an allowed priority tax claim in the amount of $180,722, entitled to interest at the rate of 7%, as shown on filed proof of claim number 5, to be paid in full on the Effective Date.

Subject to further amendment or a determination on a claim objection by the Debtor, the Wisconsin Department of Revenue has an allowed priority tax claim in the amount of $39,993, and secured tax claim in the amount of $2,180.22, entitled to interest at the statutory rate under Wis. Stat. § 108.22(1)(a), as shown on filed proof of claim number 8, which is an annual rate of 9% through December 31, 2026 and which will adjust as of January 1, 2027, to be paid in full on the Effective Date.

Subject to further amendment or a determination on a claim objection by the Debtor, the Wisconsin Department of Workforce Development, Unemployment Insurance Division, has an allowed priority tax claim in the amount of $3,746, entitled to interest at the statutory rate under Wis. Stat. § 108.22(1)(a), which is an annual rate of 9% through December 31, 2026 and which will adjust as of January 1, 2027, as shown on filed proof of claim number 6, to be paid in full on the Effective Date.

**ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

9

**4.01: Claims and interests are treated as follows under this Plan.** (The following is only a partial summary of claim treatment provided for under Article 2 and any provisions in the summary below that are inconsistent with Article 2 are of no effect):

[The remainder of this page is intentionally left blank.]

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Secured claim** of Brighton | ☒ Impaired <br><br> ☐ Unimpaired | Brighton's Class 1 secured claim is in the amount of $2,436,397.43. <br><br> It shall be satisfied through a seasonal loan structure with monthly payments of interest only, at a fixed rate of 8.0% per annum, with a 5 year term. <br><br> During the months of January, February, March, November, and December, the monthly payment shall be $24,000. <br><br> During the months of April, May, June, July, August, September and October, the monthly payment shall be $10,660. |
| Class 2(a) and Class 2(b) – **Secured claims** of WI Dept. of Workforce Development | ☒ Impaired <br><br> ☐ Unimpaired | WDWD's Class 2(a) and Class 2 (b) secured claims will be satisfied through equal monthly payments of principal and interest, at the rate of 12% per annum, over 60 months from the Effective Date. |
| Class 3 – **Non-Priority, unsecured claims** | ☒ Impaired <br><br> ☐ Unimpaired | All non-priority unsecured claims allowed under § 502 of the Code, estimated to total $242,000 will be paid in full from annual distributions of the Reorganized Debtor's net projected disposable income over three calendar years of the Plan. |
| Class 4 – **Equity Interests** | ☐ Impaired <br><br> ☒ Unimpaired | The equity interest holders shall retain their interest in the Debtor. |

10

ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01: Disputed claim.** A "disputed claim" is a claim that has not been allowed or disallowed and as to which either:

      (a)     A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

      (b)     No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

**5.02:  Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03:  Settlement of disputed claims.** After the Effective Date, the Reorganized Debtor will have the power and authority to settle and compromise a disputed claim without Court approval or compliance with Rule 9019(a).[2]

ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01: Assumption and Rejection of Unexpired Leases and Executory Contracts.**

      (a)  **Assumption of Unexpired Leases and Executory Contracts.** The Debtor shall assume the unexpired leases and executory contracts listed on Addendum 6.01(a) as of the Effective Date. The assumed unexpired leases and executory contracts vest in the Reorganized Debtor on the Effective Date.

      (b)  **Modifications to Software Licensing Agreement.** The Software Licensing Agreement with White Peaks Technologies, LLC ("White Peaks") assumed by the Debtor during its bankruptcy case shall be and hereby is modified to delete any reference to "Penokee Skiing Group LLC" and to replace any such reference with "Midwest Skiing Company, LLC."

      (c)  **Curage Amount.** The amount to cure any default in the unexpired leases or executory contracts is presumed to be the amount stated in Addendum 6.1(a) as the "Curage Amount" unless a party-in-interest objects by the date on which the Court sets for objections to confirmation of the Plan. If an objection is filed, the Court shall determine the amount necessary for the Reorganized Debtor to cure any default as required under § 365(b)(1) of the Code. The Reorganized Debtor shall have 15 days after the Court's determination becomes a Final Order to change its decision to assume the unexpired lease or executory contract or reject it. If after the Court's determination the Reorganized Debtor maintains their decision to assume the unexpired lease or executory contract, the amount necessary to cure any default shall be paid by the Reorganized Debtor within 30 days after

---

[2] "Rule" is defined as the Federal Rules of Bankruptcy Procedure.

the order determining the amount becomes a Final Order, or as otherwise agreed to between the parties, or within 90 days of the Effective Date if no objection is filed.

(d)    **Rejection of Unexpired Leases and Executory Contracts.** Any unexpired lease or executory contract not listed on Addendum 6.1(a) is rejected as of the Effective Date.

(e)    **Bar Date for Filing Claims for Rejection Damages.** Unless otherwise ordered by the Court, proofs of claim(s) for damages arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court no later than 30 days after the Debtor or Reorganized Debtor provides the Creditor with notice that its executory contract or unexpired lease has been rejected. **All such Claim(s) not filed within the time set forth in this section shall be forever barred and extinguished against the Debtor, its estate, and the Reorganized Debtor.**

ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01: Source of Plan Payments.** The Debtor shall implement the Plan through future income from operations and the Effective Date Loan.

**7.02: Effective Date Loan**. On the Effective Date, the Reorganized Debtor shall receive a loan of $200,000 for payments due under the Plan on the Effective Date with any balance to be used in operations (the "Effective Date Loan"). The Effective Date Loan will incur interest at the rate of 5.5% per annum with interest only payments due every twelve months and a balloon payment of the principal balance and any unpaid interest due five years from the Effective Date. The Effective Date Loan shall be secured by mortgages recorded against the real property of the Reorganized Debtor. The closing of the Effective Date Loan shall occur within 30 days of confirmation of the Plan.

**7.03: Vesting of Causes of Action.** On the Effective Date, all property of the Debtor and causes of action shall vest in the Reorganized Debtor. "Causes of action" include (a) preference, fraudulent transfer and other claims arising under chapter 5 of the Code.

**7.04: Subchapter V Trustee's Role.** All payments provided for by this Plan will be made directly to creditors by the Debtor. The subchapter V trustee's duties shall be discharged as of the Effective Date of this Plan if the Plan is confirmed as a "consensual" Plan. If the Plan is not confirmed as a "consensual" Plan, the subchapter v trustee's post-confirmation duties shall be limited to those identified in § 1183(b), except to the extent expressly modified by the terms of this Plan or as may occur as a result of removal of the debtor-in-possession pursuant to § 1185. In the event of confirmation under § 1191(b), the Trustee will seek court approval for any fees incurred after the Effective Date for monitoring payments and supervising the Debtor's compliance with the Plan prior to any payment for such services.

ARTICLE 8: GENERAL PROVISIONS

**8.01: Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**8.02: Effective date.** The "Effective Date" is the day that is 14 days after the entry of the confirmation order or the day after closing on the Effective Date Loan whichever is later. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Rule 9006(a)(1).

**8.03: Binding effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.04: Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.05: Retention of Jurisdiction.** The Court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**8.06: Default for failure to make payment under Plan.** In the event the Debtor should default for failing to make a payment or otherwise under the Plan, after the Effective Date, creditors with allowed claims shall not be required to seek relief from the Court before taking action to enforce their claim as modified by the Plan. Upon a payment default, subject to a 15-day notice with a right to cure to Debtor's counsel of such default, creditors are entitled to enforce their rights and remedies. Upon a non-payment default, subject to a 45 day notice with right to cure to Debtor's counsel of such default, creditors are entitled to enforce their rights and remedies.  By way of illustration and without limitation, for example, secured creditors (Class 1) would be entitled to enforce the rights and remedies in their loan documents, as modified by the Plan, and the Brighton Judgments in state court or Bankruptcy Court, under applicable state law. Nothing in this section prevents creditors with allowed claims from seeking relief from the Court including, but not limited to, dismissal or conversion of the Debtor's bankruptcy case and for a secured creditor to obtain an Order for turnover of its collateral.

ARTICLE 9: DISCHARGE AND INJUNCTION

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(a)    imposed by this Plan; or

(b)    to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 calendar years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(a)    on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or

(b)    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**ARTICLE 10: OTHER PROVISIONS**

**10.01: Retention of Property.** Unless otherwise stated in the Plan, the Debtor shall retain all property of the estate, no transfer of estate property other than required under the Plan being anticipated at this time.

**10.02: Prepayment.** The Debtor may prepay any amount to any Class at any time without penalty.

**10.03: Distribution Addresses.** All distributions shall be mailed to creditors at the addresses shown on the Debtor's schedules, except those creditors who have filed proofs of claim or notices of appearance in this action shall have their distribution checks sent to the addresses shown on those documents. Any creditor may change the address for mailing of its distribution check by written notice to counsel for the Debtor. Any distribution checks properly sent to such addresses which are returned shall become the property of the Debtor without further liability for such distributions.

Dated: April 30, 2026,
as modified June 29, 2026.        Respectfully submitted,


        */s/ Evan P. Schmit*
        Evan P. Schmit

P.O. Address:

        Kerkman & Dunn
839 N. Jefferson St., Suite 400        Attorneys for the Debtor
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kerkmandunn.com

14

**Addendum 2.01**
**Minimum Gross Sale Prices for Release of Brighton Lien**

| Real Estate (Parcel ID) Iron County | Acres | Minimum Gross Sale Price |
|---|---|---|
| 0335-000 | 4.55 | $20,500 |
| 002-0336-0100 | 11.92 | $579,480 |
| 002-0336-0000 | 35.95 | $ 437,580 |
| 002-0339-0000 | 13 | $ 329,100 |
| 002-0345-0000 | 16.58 | $ 44,820 |
| 002-0346-0000 | 38 | $ 762,600 |
| 002-0347-0000 | 39.86 | $ 107,640 |
| 002-0348-0000 | 5.01 | $ 76,080 |
| 002-0354-0000 | 20 | $ 76,700 |
| 002-0355-0000 | 40 | $ 108,00 |
| 002-0362-0000 | 40 | $ 138,000 |
| 002-0363-0000 | 40 | $ 108,000 |
| 002-0364-0000 | 40 | $ 108,000 |
| 002-0365-0000 | 40 | $ 108,000 |
| 0579-0000 | 0.23 | $16,400 |
| 0580-0000 | 0.24 | $10,500 |
| 0581-0000 | 0.24 | $17,500 |
| 0600-0000 | 0.45 | $13,500 |
| 002-0613-0000 | Out lot | $39,900 |
| 002-0639-0000 | Out lot | $10,000 |

15

## Addendum 6.1(a)
## Executory Contracts and Unexpired Lease Agreements Assumed Under the Plan

| Description of the Unexpired Lease or Executory Contract | Curage Amount |
|---|---|
| Performance Food Services Dishwasher Lease | N/A |
| Viking Coca Cola Soda Gun and Vending Machine Lease | N/A |
| White Peaks Technologies, LLC Software License Agreement (as modified under the Plan) | $17,050 (to be paid pursuant to stipulated order) |
| Worldpay, LLC Credit Card Processer Services | N/A |

16

Case 1-25-12543-cjf    Doc 134    Filed 07/08/26    Entered 07/08/26 09:20:58    Desc
Main Document      Page 19 of 24

**Exhibit 1**
**Summary of Plan Payments**

| Administrative Expenses | Estimated Amount | Paid on Effective Date[1] | Remaining Claim Amount | Monthly Plan Payment | Plan Terms |
|---|---|---|---|---|---|
| Kerkman & Dunn | $ 15,000 | $ 15,000 | $ - | $ - | Paid on the Effective Date. |
| Subchapter V Trustee | $ 5,000 | $ 5,000 | $ - | $ - | Paid on the Effective Date. |
| Debtor's Accountant | $ 5,000 | $ 5,000 | $ - | $ - | Paid on the Effective Date. |
|  |  |  |  |  | Paid on the Effective Date. |

| Tax Claim (Priority Unsecured and Secured) | Amount | Paid on Effective Date[3] | Remaining Claim Amount | Monthly Plan Payment[2] | Plan Terms | Petition Date (11/19/2025) |
|---|---|---|---|---|---|---|
| Iron County Treasurer | $ - | $ - | $ - | $ - |  |  |
| Internal Revenue Service | $ 180,722 | $ 180,722 | $ - | $ - | Paid on the Effective Date. | 8.50% 11 U.S.C. § 511 |
| Michigan Dept. of Treasury | $ 436 | $ 436 | $ - | $ - | Paid on the Effective Date. | 9.50% |
| WI Dept. of Revenue | $ 38,741 | $ 38,741 | $ - | $ - | Paid on the Effective Date. | 12.00% 11 U.S.C. § 511 |
| WI Dept. of Workforce Development | $ 3,746 | $ 3,746 | $ - | $ - | Paid on the Effective Date. | 12.00% 11 U.S.C. § 511 |

| Class | | Amount | | | In-Season Monthly Plan Payment | Out of Season Monthly Plan Payment | | |
|---|---|---|---|---|---|---|---|---|
| 1 | Brighton Asset Management | $ 2,254,695 | $ - | 2,254,695 | $ (24,000) | $ (10,660) | In-Season monthly installments of interest of $24,000 from November through March in-season. Reduced out-of-season installments of $10,660. Balloon payment after 5 years. | 8.00% |
| 2 (a) | WI Dept of Workforce Development | $ 21,563 | $ - | 21,563 | $ (479.67) | (479.67) | Monthly installments of principal and interest at a rate of 12% interest rate, over 60 months from the Effective Date. | |
| 2 (b) | WI Dept of Workforce Development | $ 12,483 | $ | 12,483 | $ (277.69) | (277.69) | Monthly installments of principal and interest at a rate of 12% interest rate, over 60 months from the Effective Date. | |
|  | Monthly Plan Payments Before Unsecured Creditors | | | | $ (24,757) | (11,417) | | |

| Class | | Estimated Amount | | | Total Distributions | | |
|---|---|---|---|---|---|---|---|
| 3 | Non-priority Unsecured Claims | $ 241,174 | | | $ 241,174 | Paid through annual distributions over three years. | |

[1] Payments on Effective Date unless otherwise agreed to by the professional. All compensation subject to Court approval. Kekrman & Dunn holds approximately $18,000 of its initial retainer to apply to approved compensation.

[2] Assumes confirmation order in June 2026 with Effective Date occuring July 2026.

3 Payments on Effective Date paid from funds on hand and $200,000 Effective Date Loan.

[4] Estimated amount of Class 4 claims does not include subordinated claim of equity owner.

[5] Estimated Amount reduced to reflect amount of compensation Debtor's counsel has not previouly received interim approval for and paid by the Debtor. Total compensation estimated at $80,000.

17

Case 1-25-12543-cjf    Doc 134    Filed 07/08/26    Entered 07/08/26 09:20:58    Desc
Main Document    Page 20 of 24

**Exhibit 2 Cash Flow Projections**

| Income | Petition to December 31, 2025 | January 2026 | February 2026 | March 2026 | April 2026 | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | Total Twelve Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| General Sales | $ - | $ - | $ 254,416 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 254,416 |
| Food Sales | $ - | $ - | $ 4,654 | $ 17,021 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 21,675 |
| Lodging Revenue | $ 54,804 | $ 128,261.32 | $ 10,339 | $ 43,698 | $ 15,000 | $ 12,000 | $ 31,000 | $ 60,000 | $ 60,000 | $ 85,000 | $ 85,000 | 585,102 |
| Misc. Sales | $ 18,650 | $ - | $ - | $ - | $ 500 | $ 500 | $ 500 | $ 500 | $ 600 | $ 600 | $ 600 | 22,450 |
| Rental Shop | $ 31,924 | $ 10,732.84 | $ - | $ 3,737 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 46,394 |
| Restaurant | $ 50,419 | $ 42,821.96 | $ 1,380 | $ 6,260 | $ 7,500 | $ 15,000 | $ 22,000 | $ 30,000 | $ 31,000 | $ 40,000 | $ 40,000 | 286,381 |
| Ski Tickets | $ 50,990 | $ 184,555.86 | $ 25,417 | $ 53,750 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 314,713 |
| **Total Income** | $ 206,787 | $ 366,371.98 | $ 296,206 | $ 292,904 | $ 23,000 | $ 27,500 | $ 53,500 | $ 90,500 | $ 91,600 | $ 125,600 | $ 125,600 | 1,699,570 |
| **Cost of Goods Sold** | $ 14,764 | $ 21,326.42 | $ 16,736 | $ 16,924 | $ 2,500 | $ 2,500 | $ 3,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 3,000 | 92,750 |
| **Gross Profit** | $ 192,023 | $ 345,045.56 | $ 279,471 | $ 275,980 | $ 20,500 | $ 25,000 | $ 50,500 | $ 86,500 | $ 87,600 | $ 121,600 | $ 122,600 | 1,606,819 |
| **Operating Expenses** | | | | | | | | | | | | |
| Advertising and Promotion | $ 557 | $ 2,097.58 | $ 9,674 | $ 1,859 | $ 1,040 | $ 1,040 | $ 1,040 | $ 1,040 | $ 1,040 | $ 1,040 | $ 1,040 | 21,469 |
| Bank Charges & Fees | $ 39 | $ 9,172.46 | $ 10,853 | $ | $ 3,200 | $ 955 | $ 1,250 | $ 1,250 | $ 1,250 | $ 2,500 | $ 2,500 | 32,970 |
| Compuer Software | $ - | $ 3,918.14 | $ - | $ 70 | $ 100 | $ - | $ - | $ - | $ - | $ - | $ - | 4,088 |
| Business Licenses and Permits | $ 1,960 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3,000 | $ - | 4,960 |
| Computer Expenses | $ 15,490 | $ 615.84 | $ 3 | $ 4 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 16,112 |
| Credit Card Fees | $ 3,198 | $ (2,497.54) | $ - | $ 10,900 | $ 4,000 | $ 3,500 | $ 2,500 | $ 1,000 | $ 1,000 | $ 2,500 | $ 2,500 | 28,600 |
| Equipment Rental | $ - | $ - | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | 900 |
| Finance Costs | $ 94 | $ - | $ - | $ - | $ | $ 0 | $ - | $ - | $ - | $ - | $ - | 94 |
| Fuel & Gas | $ - | $ 4,454.97 | $ - | $ 137 | $ 400 | $ 750 | $ 750 | $ 750 | $ 750 | $ 1,000 | $ 1,000 | 9,992 |
| Hotel Supplies | $ 1,020 | $ 1,763.28 | $ 893 | $ 804 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 4,480 |
| Housekeeping Supplies | $ - | $ - | $ 71 | $ - | $ 250 | $ 250.00 | $ 375 | $ 300 | $ 300 | $ 300 | $ 300 | 2,146 |
| Insurance Expense | $ 29,455 | $ 8,049.98 | $ 11,433 | $ 11,675 | $ 8,050 | $ 8,050.00 | $ 8,050 | $ 8,050 | $ 8,050 | $ - | $ - | 100,863 |
| Job Supplies | $ - | $ - | $ 356 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 356 |
| Office Supplies | $ 2,205 | $ 299.50 | $ 224 | $ 986 | $ 300 | $ | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | 4,765 |
| Operating Supplies | $ 122 | $ 215.11 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 337 |
| Pest Control | $ 1,350 | $ 392.38 | $ - | $ 262 | $ - | $ 262.00 | $ - | $ 262 | $ 262 | $ | $ 262 | 3,052 |
| Professional Fees/Services | $ - | $ 295.40 | $ 80 | $ 5,535 | $ 200 | $ - | $ - | $ 5,000 | $ 5,000 | $ - | $ - | 16,110 |
| Property Taxes | $ - | $ - | $ - | $ - | $ 51,139 | $ 4,250 | $ 4,250 | $ 4,250 | $ 4,250 | $ 4,250 | $ 4,250 | 76,639 |

18

Case 1-25-12543-cjf    Doc 134    Filed 07/08/26    Entered 07/08/26 09:20:58    Desc
Main Document    Page 21 of 24

19

**Exhibit 2 Cash Flow Projections**

| | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Postage | $ 31 | $ 15.60 | $ 78 | $ 116 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 241 |
| Repairs and Maintenance | $ 7,208 | $ 7,134.35 | $ 9,506 | $ 9,405 | $ 10,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 73,253 |
| Supplies | $ - | $ - | $ 127 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 127 |
| Telephone & Internet | $ - | $ - | $ - | $ 2,511 | $ 1,555 | $ 1,555 | $ 1,555 | $ 1,555 | $ 1,555 | $ 1,555 | $ 1,555 | $ 13,396 |
| Total Payroll Expenses | $ 97,220 | $ 102,888.67 | $ 91,702 | $ 94,652 | $ 28,000 | $ 25,000 | $ 30,000 | $ 38,000 | $ 42,000 | $ 25,000 | $ 60,000 | $ 634,463 |
| Unapplied Cash Bill Payment Expense | $ - | $ - | $ - | $ 1,445 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,445 |
| Utilities (Electricity and Propane) | $ 4,975 | $ 28,965.48 | $ 21,758 | $ 18,554 | $ 1,500 | $ 1,250 | $ 1,250 | $ 3,000 | $ 3,000 | $ 1,300 | $ 1,500 | $ 87,053 |
| Vehicle Expense (Fule & Gas) | $ 6,044 | $ - | $ 23,749 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 29,792 |
| Waste Disposal | $ 456 | $ - | $ - | $ 791 | $ 791 | $ - | $ 791 | $ 791 | $ 791 | $ - | $ - | $ 4,412 |
| **Total Expenses** | $ 171,425 | $ 162,358.59 | $ 180,607 | $ 159,805 | $ 110,625 | $ 51,962 | $ 57,061 | $ 70,498 | $ 74,498 | $ 47,695 | $ 80,157 | $ 1,166,692 |
| **Net Income** | $ 20,598 | $ 182,686.97 | $ 98,863 | $ 116,175 | $ (90,125) | $ (26,962) | $ (6,561) | $ 16,002 | $ 13,102 | $ 73,905 | $ 42,443 | $ 440,128 |
| Loan Payment (Annual payment of nterest only 5.5%) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 11,000 |
| Brighton Asset Adequate Protection | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 10,660 | $ 10,660 | $ 10,660 | $ 10,660 | $ 147,640 |
| WI Dept of Workforce Development | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 480 | $ 480 | $ 480 | $ 480 | $ 1,919 |
| Software Agreement Cure Payment | $ - | $ 1,500.00 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 8,050 | $ - | $ - | $ - | $ 17,050 |
| **Exit Financing, Secured Creditor, & Cure Payments** | $ 15,000 | $ 16,500.00 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 19,190 | $ 11,140 | $ 11,140 | $ 11,140 | $ 177,609 |
| **Net After Secured Creditor and Cure** | | | | | | $ (23,061) | $ (3,188) | $ 1,962 | $ 62,765 | $ 31,303 | | $ 262,519 |
| Long Chair haul rope | | | | | | | | $ | 150,000 | | $ | 150,000 |
| | | | | | | | | | | | $ | 112,519 |
| **Projected Cash Balance[1]** | | | | | | $ 276,939 | $ 273,751 | $ 275,714 | $ 188,479 | $ 219,782 | | |

[1] Debtor estimates cash on hand on Effective Date of $250,000 to $275,000.

Exhibit 2: Cash Flow Projections

**Annual**

| | 2026 | 2027 | 2028 |
|---|---|---|---|
| **Gross Profit** | $ 1,600,000 | $ 1,550,000 | $ 1,600,000 |
| | | | |
| **Operating Expenses** | | | |
| Wages | $ 634,000 | $ 597,000 | $ 615,000 |
| Insurance | $ 101,000 | $ 103,000 | $ 106,000 |
| Utilities | $ 100,000 | $ 103,000 | $ 106,000 |
| Repairs | $ 73,000 | $ 72,000 | $ 74,000 |
| Advertising | $ 40,000 | $ 42,000 | $ 42,000 |
| Fuel | $ 30,000 | $ 36,000 | $ 37,000 |
| Other | $ 201,000 | $ 165,000 | $ 170,000 |
| **Total Operating Expenses** | $ 1,179,000 | $ 1,118,000 | $ 1,150,000 |
| | | | |
| **EBITDA** | $ 421,000 | $ 432,000 | $ 450,000 |
| | | | |
| **Effective Date Loan, Secured Creditor, & Cure Payments** | $ 177,609 | $ 205,620 | $ 205,620 |
| | | | |
| **Capital Improvement** | $ 150,000 (Long chair haul rope) | $ 150,000 (Snowmaking guns) | $ 125,000 (Snowmaking pipe) |
| | | | |
| **Net Projected Disposable Income** | $ 93,391.34 | $ 76,380.00 | $ 119,380.00 |
| | | | |
| **Distribution to Class 3** | $ 80,000 | $ 80,000 | $ 82,000 |
| **Annual Carryover** | $ 13,391 | $ 9,771 | $ 47,151 |

Exhibit 3
List of Creditors

| Class | Description | Amount Scheduled | Contingent, Unliquidated, Disputed | Amount Claimed | Estimated Allowed Amount | Claim No. |
|---|---|---|---|---|---|---|
| | **Administrative Expenses** | | | | | |
| | Kerkman & Dunn[1] | | | | $ 15,000.00 | |
| | Subchapter V Trustee | | | | $ 5,000.00 | |
| | Debtor's Accountant | | | | $ 5,000.00 | |
| | | | | **Total Admin. Expense** | **$ 25,000.00** | |
| | | | | | | |
| | **Tax Claim (Priority Unsecured and Secured)** | **Amount Scheduled** | | **Amount Claimed** | **Estimated Allowed Amount** | **Claim No.** |
| | Iron County Treasurer | $ 23,231 | | $ - | $ 23,231 | |
| | Internal Revenue Service | $ - | | $ 180,722 | $ 180,722 | 5 |
| | Michigan Dept. of Treasury | $ 436 | | $ - | $ 436 | |
| | WI Dept. of Revenue | $ 21,600 | | $ 38,741 | $ 38,741 | 8 |
| | WI Dept. of Revenue | | | $ 70,338 | $ 70,338 | 14 |
| | WI Dept. of Workforce Development | $ - | | $ 3,746 | $ 3,746 | 6 |
| | | | | **Total Priority** | **$ 317,213** | |
| 1 | **Brighton Asset Management** | $ 2,121,160 | | $ 2,254,695 | $ 2,121,160 | 11 |
| 2(a) | **WI Dept of Workforce Development** | $ 34,796.87 | | $ 21,563 | $ 21,563 | 2 |
| 2 (b) | **WI Dept of Workforce Development** | $ - | | $ 12,483 | $ 12,483 | 3 |
| | | | | **Total Secured** | **$ 2,155,206.44** | |

| Class | Description | Amount Scheduled | Contingent, Unliquidated, Disputed | Amount Claimed | Estimated Allowed Amount for Distributions | Claim No. | |
|---|---|---|---|---|---|---|---|
| 3 | **Unsecured Creditors** | | | | | | |
| | Amundsen Davis, LLC | $ 16,500.00 | | $ - | $ 16,500.00 | | 6.84% |
| | Auto Value | $ 80.77 | | $ - | $ 80.77 | | 0.03% |
| | Badger Liquor Co. Inc. | $ 452.81 | | $ - | $ 452.81 | | 0.19% |
| | Bayfield Electric Cooperative | $ 76,789.75 | | $ 76,789.75 | $ 76,789.75 | 10 | 31.84% |
| | Brightspeed | $ 1,135.96 | | $ - | $ 1,135.96 | | 0.47% |
| | Century Link - Lumen | $ 41,201.28 | | $ - | $ 41,201.28 | | 17.08% |
| | CHS, LLC | $ 83.22 | | $ - | $ 83.22 | | 0.03% |
| | Contrast Coffee Company | $ 2,144.70 | | $ - | $ 2,144.70 | | 0.89% |
| | Dave Hooten | Unknown | Disputed | $ - | $ - | | 0.00% |
| | David Dziuban | $ 60,566.10 | Subordinated | $ - | $ - | | 0.00% |
| | Gogebic Range Solid Waste Management | $ 1,340.86 | | $ - | $ 1,340.86 | | 0.56% |
| | Internal Revenue Service | $ 13,047.15 | | | $ 13,047.15 | 5 | 5.41% |
| | Jeff Krohn | N/A | Disputed | $ 107,087.19 | $ - | 12 | 0.00% |
| | JJ Broadcasting Inc. | $ 1,377.70 | | $ - | $ 1,377.70 | | 0.57% |
| | Joe Newago | $ 1,007.50 | | $ - | $ 1,007.50 | | 0.42% |
| | LoopOne Funding | $ 7,350.00 | | $ - | $ 7,350.00 | | 3.05% |
| | Midland Services | $ 1,152.79 | | $ - | $ 1,152.79 | | 0.48% |
| | NEIS | $ 90.20 | | $ - | $ 90.20 | | 0.04% |
| | Nelson Surveying | $ 2,077.50 | | $ - | $ 2,077.50 | | 0.86% |
| | nxtConcepts. Ltd | $ 34,204.97 | | $ 25,403.32 | $ 25,403.32 | 7 | 10.53% |
| | O'Dea, Nordeen and Pickens P.C. 3350 | $ 3,350.00 | | $ - | $ 3,350.00 | | 1.39% |
| | Orkin | $ 1,350.00 | | $ - | $ 1,350.00 | | 0.56% |
| | Otis Elevator Company | $ 11,271.73 | | $ - | $ 11,271.73 | | 4.67% |
| | Ritchie Lakeland Oil Co. Inc. | $ 1,541.01 | | $ - | $ 1,541.01 | | 0.64% |
| | Sanitary District | $ 3,930.00 | | $ - | $ 3,930.00 | | 1.63% |
| | Spectrum Reach | $ 6,911.61 | | $ - | $ 6,911.61 | | 2.87% |
| | Summit Fire Protection | $ 1,655.04 | | $ - | $ 1,655.04 | | 0.69% |
| | Uline | $ 632.84 | | $ 555.30 | $ 555.30 | 1 | 0.23% |
| | WI Dept of Revenue | $ - | | $ 1,661.50 | $ 1,661.50 | 8 | 0.69% |
| | WI Dept of Revenue | | | $ 15,001.95 | $ 15,001.95 | 14 | 6.22% |
| | WI Dept. of Workforce Development | $ - | | $ 750 | $ 750 | 4 | |
| | Wisconsin Department of Safety and Professional Service | N/A | | $ 1,960.00 | $ 1,960.00 | 13 | 0.81% |
| | White Peaks Technologies | $ 11,550.00 | Assumed | $ 17,050.00 | $ - | 9 | 0.00% |
| | Whitecap Mtn. Entertainment, LLC | Unknown | Disputed | $ - | $ - | | 0.00% |
| | | | | **Total** | **$ 241,174** | | 99.69% |

[1] Estimated Amount reduced to reflect amount of compensation Debtor's counsel has not previously received interim approval for and paid by the Debtor. Total compensation estimated at $80,000.

21

**Liquidation Analysis**

| Description | Estimated Value | | Reduction | | Liquidation Value[1] |
|---|---|---|---|---|---|
| **Real Estate (Parcel ID)** | | | | | |
| 0335-000 | $20,500 | $ | (8,200) | $ | 12,300 |
| 002-0336-0100 | $579,480 | $ | (231,792) | $ | 347,688 |
| 002-0336-0000 | $437,580 | $ | (175,032) | $ | 262,548 |
| 002-0339-0000 | $329,100 | $ | (131,640) | $ | 197,460 |
| 002-0345-0000 | $44,820 | $ | (17,928) | $ | 26,892 |
| 002-0346-0000 | $762,600 | $ | (305,040) | $ | 457,560 |
| 002-0347-0000 | $107,640 | $ | (43,056) | $ | 64,584 |
| 002-0348-0000 | $76,080 | $ | (30,432) | $ | 45,648 |
| 002-0354-0000 | $76,700 | $ | (30,680) | $ | 46,020 |
| 002-0355-0000 | $108,000 | $ | (43,200) | $ | 64,800 |
| 002-0362-0000 | $138,000 | $ | (55,200) | $ | 82,800 |
| 002-0363-0000 | $108,000 | $ | (43,200) | $ | 64,800 |
| 002-0364-0000 | $108,000 | $ | (43,200) | $ | 64,800 |
| 002-0365-0000 | $108,000 | $ | (43,200) | $ | 64,800 |
| 0579-0000 | $16,400 | $ | (6,560) | $ | 9,840 |
| 0580-0000 | $10,500 | $ | (4,200) | $ | 6,300 |
| 0581-0000 | $17,500 | $ | (7,000) | $ | 10,500 |
| 0600-0000 | $13,500 | $ | (5,400) | $ | 8,100 |
| 002-0613-0000 | $39,900 | $ | (15,960) | $ | 23,940 |
| 002-0639-0000 | $10,000 | $ | (4,000) | $ | 6,000 |
| | | | | | |
| **Personal Property** | | | | | |
| Cash and Accounts | $ | - | $ | - | $ 300,000 |
| Furniture | $ | 30,500 | $ | (12,200) | $ 18,300 |
| Vehicles | $ | 18,000 | $ | (7,200) | $ 10,800 |
| Equipment and Machinery | $ | 909,000 | $ | (363,600) | $ 545,400 |
| Total Assets Before Liens and Chapter 11 Expenses | | | | $ | 2,741,880 |
| | | | | | |
| Total Secured | | | | $ | 2,155,206.44 |
| Total Priority | | | | $ | 317,213 |
| Chapter 11 Administrative Expenses | | | | $ | 25,000 |
| | | | | $ | 2,497,420 |
| | | | | | |
| **Assets Availble for Unsecured Creditors Under Liquidation** | | | | $ | 244,460 |
| **Estimated Total Unsecured Non-Priority Claims** | | | | $ | 241,174 |
| **Projected % Unsecured Non-Priority Claims Under Liquidation** | | | | | 100% |

(Does not include any fees for Chapter 7 Trustee or professionals employed by Debtor's Chapter 7 estate.)

[1] Estimated at 40% for forced liquidation.

Estimated value for real estate based on Debtor's best estimate.

22